DECISION
{¶ 1} Relator, John R. Rinck ("relator"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate found that the commission did not abuse its discretion in denying relator's request for PTD compensation. Therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} In his objections to the magistrate's decision, relator essentially reargues the same points addressed in the magistrate's decision.
 {¶ 4} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Petree and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. John R. Rinck, :
Relator, :
v. : No. 05AP-1108
M. Bohlke Veneer Corp. et al., : (REGULAR CALENDAR)
Respondents. :
 MAGISTRATE'S DECISION Rendered on May 31, 2006 William D. Snyder Associates, William D. Snyder and GregClaycomb; Butkovich, Crosthwaite Gast, and Stephen P.Gast, for relator.
Jim Petro, Attorney General, and Sandra E. Pinkerton, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In this original action, relator, John R. Rinck, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 6} 1. On January 18, 1991, relator sustained an industrial injury while employed as a machine operator in a factory operated by respondent M. Bohlke Veneer Corp. ("Bohlke Veneer"), a state fund employer.
 {¶ 7} 2. The industrial claim is allowed for "herniated disc L4-5 with stenosis; lumbar sprain; torn medial meniscus, left knee; post laminectomy syndrome, lumbar" and is assigned claim No. 91-2904.
 {¶ 8} 3. On the PTD application, relator stated that he graduated from New Miami High School in 1979. He has not gone to a trade school or had any type of special training.
 {¶ 9} 4. Among other information sought, the application form poses three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "Yes," "No," "Not well," relator selected the "Not well" response for all three queries.
 {¶ 10} 5. The application form asks the claimant to provide information regarding his work history. Relator stated that he worked at the factory operated by Bohlke Veneer from 1986 or 1987 to the date of his injury in January 1991. He operated a machine that cut logs into veneer and he supervised five people.
Asked to describe his duties at Bohlke Veneer, relator wrote:
Put logs on machine, made sure logs were cut at the right diameter and thickness.
 {¶ 11} 6. On the application, relator also indicated that he worked as a welder in a factory prior to his employment with Bohlke Veneer. He welded gas manifolds for stoves. He acquired basic the knowledge of a welder.
 {¶ 12} 7. On the application, relator also indicated that he was employed in construction with "Zeugler Cable." He installed underground cable. Relator states "[h]ad to be able to read a blueprint." He also supervised six or seven people.
 {¶ 13} 8. On December 3, 2004, at the commission's request, relator was examined by Andrew Freeman, M.D. Dr. Freeman is board certified in occupational medicine. In his narrative report, Dr. Freeman wrote:
Based on the American Medical Association's Guides to theEvaluation of Permanent Impairment — 5th Edition, the whole person impairment for the allowed physical conditions in the claim is 27%.
 {¶ 14} 9. On a Physical Strength Rating form dated December 3, 2004, Dr. Freeman indicated that relator is medically able to perform "sedentary work."
 {¶ 15} 10. On February 1, 2005, at his attorney's request, relator was interviewed by William G. Cody, a vocational expert. Earlier, on January 13, 2005, Cody administered testing. Cody reported:
Education
Mr. Rinck graduated from high school in 1979 through an occupational work program (OWP). He has not participated in any sort of formal vocational training. Mr. Rinck reports that he can read, write, and perform basic mathematical operations, but not very well. In his OWP, he worked in the area of construction labor.
Testing Results
Academic testing was administered to Mr. Rinck on January 13, 2005. He seemed concerned about performing well. Present testing, therefore, seems to be an accurate representation of his true abilities.
The Wide Range Achievement Test 3 (WRAT) measures the ability to recognize and pronounce words. On this test, Mr. Rinck demonstrated reading recognition ability at the 3.0 grade level equivalent. He was able to correctly pronounce words as difficult as "contemporary" and "abuse." He was unable to pronounce words as simple as "lame" and "collapse." On the SRA Reading Index, a more diagnostic test of reading ability, Mr. Rinck demonstrated abilities above the proficiency level in three of the five areas measured by the test. The proficiency level is the level at which one demonstrates the ability needed in industrial and trade settings. Mr. Rinck demonstrated ability above the proficiency level in the areas of picture-word association, word decoding, and sentence comprehension. He displayed ability below the proficiency level in the areas of phrase comprehension, and paragraph comprehension. This information indicates that his reading ability is below the level expected as a result of his high school education. He would not be able to function in jobs in which reading comprehension is required.
On the WRAT arithmetic subtest, Mr. Rinck demonstrated skills at the 3.0 grade level equivalent. This information indicates that his mathematical ability [is] below the level expected as a result of his high school education. He would not be able to function in jobs requiring anything beyond simple mathematic usage.
Work History
From 1987 until the date of his injury in 1991, Mr. Rinck worked as a machine operator. In this position he was responsible for using a rotary slicer to cut logs into veneer and making sure other machine operators had logs to cut. He handled over one hundred pounds on an occasional basis. This semiskilled job was performed at the very heavy level of physical demand. The equipment operation skills that he acquired through the performance of this position do not transfer to jobs performed at lighter levels of physical demand. Mr. Rinck indicates that he acted as a supervisor in this position. This experience did not provide him with transferable administrative skills, as the primary thrust of his work was the physical performance of the required work. He simply ensured other workers had work to do. His level of educational attainment is consistent with him not having transferable management skills.
For a period of time, Mr. Rinck worked as a welder. In this position he was responsible for attaching manifolds to gas stoves. He handled over one hundred pounds on an occasional basis. This skilled job was performed at the very heavy level of physical demand. The tool usage and equipment operation skills that he acquired through the performance of this position transfer to medium level welding jobs.
For a period of time, Mr. Rinck worked as a construction laborer. In this position he was responsible for digging holes for cable access. He handled over one hundred pounds on an occasional basis. This unskilled job was performed at the very heavy level of physical demand. Mr. Rinck indicates that he acted as a supervisor in this position. This experience did not provide him with transferable administrative skills, as the primary thrust of his work was the physical performance of the required work. He simply ensured others were working.
 {¶ 16} 11. Based on his vocational analysis, Cody concluded that relator is PTD.
 {¶ 17} 12. Following an August 30, 2005 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
The injured worker was examined at the request of the Industrial Commission by Dr. Freeman on 12/03/2004 with regard to the allowed orthopedic conditions in the claim. Dr. Freeman examined the injured worker's low back and found tenderness to palpation of the lumbar spine. He indicated that there were no trigger points that were palpated and no sacroiliac tenderness to palpation. He indicated that multiple Waddell's signs were positive including pain with simulated trunk rotation, give way weakness, difference between sitting and lying SLR, and axial compression. Sitting from a lying position was easily accomplished by the abdominal rectus muscles without a log-roll maneuver. He indicated that the injured worker bent forward at the waist to put on shoes and socks to a significantly greater degree than was exhibited during the formal lumbar range of motion testing.
Dr. Freeman indicated that the allowed orthopedic conditions had reached maximum medical improvement and result in a 27% whole person impairment rating. Dr. Freeman concluded that the injured worker would be able to engage in sedentary work activity based upon the allowed orthopedic conditions in the claim.
The Staff Hearing Officer finds that the injured worker's condition has reached maximum medical improvement and is permanent and results in a 27% whole person impairment rating. The Hearing Officer finds that the injured worker would be able to engage in sedentary work activity based upon the 12/03/2004 report from Dr. Andrew Freeman.
The Hearing Officer finds that the injured worker is 44 years of age, has a 12th grade education and previous work experience as a machine operator, operating a machine that slices veneer, welder and a construction worker. The injured worker's past work history has involved skilled and semi-skilled work activity.
The Staff Hearing Officer finds that injured worker's age of 44 classifies the injured worker as a person of younger age. The Hearing Officer finds this is a positive factor with regard to the injured worker returning to sedentary employment activity or engaging in any retraining which may be necessary to return to employment.
The Hearing Officer finds that the injured worker has a 12th grade education and this would be a benefit to the injured worker returning to entry level sedentary employment activity.
A review of vocational testing by Mr. Cody indicates that the injured worker is able to read and do math at the 3rd grade level. The Hearing Officer finds that the injured worker's 12th grade educational level is inconsistent with the one time test results completed by Mr. Cody.
The Hearing Officer finds that the injured worker's academic ability is more closely aligned with his previous 12th grade education as opposed to the testing results found by Mr. Cody.
The Hearing Officer finds that the injured worker's ability to obtain a high school degree which involved testing and course work over a long period of time is more indicative of the injured worker's academic ability rather than a one time test. Further, the Hearing Officer finds that the injured worker's academic abilities are closer to the 12th grade level than the 3rd
grade level as the injured worker was able to learn and master semi-skilled and skilled employment involving machine operation and welding.
Assuming that this testing by Mr. Cody is correct, such limited education and academic skills have not prevented the injured worker from working. In fact he has been able to master semi-skilled and skilled employment activity.
A review of the injured worker's past work history indicates that the injured worker was able to master such skills as welding as well as machine operation. These jobs required the injured worker to be able to among other things read blue prints, do repetitive work, engage in precise work to close tolerances and make judgments and decisions.
The Hearing Officer finds that the injured worker has learned to perform semi-skilled and skilled employment in the past despite his academic skills is evidence that the injured worker is able to benefit from on the job training. These factors further indicate that the injured worker possesses the intellectual capacity to learn to perform at least unskilled employment activities in the future.
The Hearing Officer finds that the injured worker last worked in 1991 and has not returned to the work force since that time.
The Hearing Officer finds that the injured worker has not engaged in any type of rehabilitation efforts since that time in order to return to the work force.
The Hearing Officer finds that the injured worker attempted vocational rehabilitation but that vocational rehabilitation was closed on 11/24/2003. The 11/24/2003 report indicates that a vocational evaluation was completed on 11/10/2003 and found that the injured worker did not have any interest in returning to any work environment. It was determined at that time that no vocational goal could be determined based upon the injured worker's evaluation results. The injured worker confirmed that he was unable to identify any form of employment for which he would willingly express an interest.
The vocational report concluded "Mr. Rinck has not expressed an interest in participating in a job search program at this time". Additionally, Mr. Rinck was unable to identify any type of employment that he would be interested in pursing through a comprehensive vocational evaluation. The physician of record has also identified permanent restrictions that would severely impact any potential job search program. As no goal can be identified, and because Mr. Rinck does not believe that such a job search would be a benefit to him at this time, his vocational rehabilitation file is being closed effective 11/24/2003 for non-feasibility to participate in these services.
The Hearing Officer finds that the injured worker has not attempted to engage in any type of vocational rehabilitation to return to the work force since leaving the work force in 1991. The Hearing Officer finds that such a lack of effort is not a positive factor with regard to the granting of permanent and total disability compensation.
Based upon the injured worker's age, education, and previous work experience the Hearing Officer finds that there currently are a number of employment options available to the injured worker including employment as a surveillance system monitor, charge account clerk, telephone solicitor, check cashier and yard clerk.
Based upon the injured worker's young age, high school education, and past work experience, as well as the 12/03/2004 report from Dr. Freeman the Hearing Officer finds that the injured worker is not permanently and total disabled. Therefore the injured worker's Application for Permanent and Total Disability Compensation filed 10/20/2004 is denied.
The Hearing Officer relies on the Dictionary of Occupational Titles — Revised Fourth Edition, 1991 (U.S. Department of Labor), the 1991 Revised Handbook for Analyzing Jobs and U.S. Department of Labor — Occupational Outlook Handbook (2004-2005).
The Hearing Officer also relies on the 12/03/2004 report of Dr. A. Freeman and the vocational closure report dated 11/24/2003.
 {¶ 18} 13. On October 17, 2005, relator, John R. Rinck, filed this mandamus action.
Conclusions of Law:
 {¶ 19} It is the magistrate's decision that this court deny relator's request for a writ of mandamus as more fully explained below.
 {¶ 20} For its threshold medical determination, the commission, through its SHO, found that relator is medically able to perform sedentary work based upon Dr. Freeman's report. Here, relator does not challenge Dr. Freeman's report nor the commission's finding that he is medically able to perform sedentary work. However, relator does challenge the commission's analysis of the nonmedical factors.
 {¶ 21} Here, the commission, through its SHO, reviewed the Cody report but did not rely upon it.
 {¶ 22} The SHO discredited Cody's testing results because he found those results to be inconsistent with relator's demonstration of his intellectual ability to learn and master machine operation and welding and his completion of a high school education. There was no abuse of discretion in that regard. It was the duty of the commission to weigh Cody's testing results against other evidence in the record. Clearly, the commission was not required to accept Cody's conclusion that relator reads and does math at the third grade level.
 {¶ 23} Here, the SHO analyzed in great detail relator's work history. The SHO noted, for example, that relator learned to read blueprints and was able to engage in precise work to close tolerances. The SHO noted that relator was able to learn semi-skilled and skilled employment despite his academic skills. The SHO concluded that relator has the intellectual capacity to learn to perform at least unskilled employment in the future. This analysis is not an abuse of discretion.
 {¶ 24} The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, because the commission is the expert on the nonmedical issue. State ex rel.Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271.
 {¶ 25} Moreover, the commission was not required to devalue relator's high school education simply because Cody reported that relator graduated from high school "through an occupational work program" in the "area of construction labor." The commission appropriately noted that relator has a 12th grade education, something that relator himself indicated on his PTD application.
 {¶ 26} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.